■ PETER G. BOTTI et al., Respondents, v GORDON RUSSELL et al., Appellants.—Mahoney, J. Appeal (transferred to this court by order of the Appellate Division, Second Department) from that part of an order of the Supreme Court (Peter Patsalos, J.), entered November 21, 1990 in Orange County, which partially granted plaintiffs' motion for summary judgment dismissing defendants' first and second counterclaims and denied defendants' cross motion for summary judgment on said counterclaims.

In this appeal we are asked to review the propriety of Supreme Court's grant of summary judgment dismissing defendants' counterclaims for malpractice and fraud arising out of their purchase of certain real property. Plaintiff Peter G. Botti (hereinafter plaintiff), an attorney, and his wife, plaintiff

Margaret A. Botti, are fee owners of certain improved real property known as 88 Highland Avenue in the City of Middletown, Orange County (hereinafter plaintiffs' land). The estate of Gary N. Hodges (hereinafter the estate) owned the lot next door to plaintiffs' land (lot 13), upon which stands a single-family dwelling, and a lot located directly behind plaintiffs' land and lot 13 (lot 12). A burned-out, boarded-up structure referred to as a carriage house stands on that part of lot 12 which is directly behind lot 13. The estate was anxious to sell both properties.

Desirous of extending his rear property line, plaintiff approached the executor of the estate in October 1987 about selling to him that portion of lot 12 located directly behind his land (lot 12A). The executor agreed and the parties entered into a contract which was duly recorded.

Thereafter, plaintiff advised defendants, with whom he was acquainted both personally and professionally, that the estate was looking to sell lot 13 and the remainder of lot 12 (lot 12B). At that time, he also informed them that he had contracted to purchase lot 12A. Defendants contacted the executor and several months later entered into a contract to purchase the remaining lands. Inasmuch as plaintiff was advised, upon inquiry, by the City of Middletown Building Inspector and the City Assessor's office that the proposed merger of lot 12 did not constitute a subdivision of land but only a boundary line change, resulting from the merger of one half of lot 12 into lot 13 and one half into plaintiffs' land, and that no Planning Board or City Council approval was necessary in order to proceed, plaintiff did not pursue this issue further. The estate thereafter conveyed lots 13 and 12B, which were described in the deed as one large parcel approximately 127 feet by 228 feet by 123 feet by 199 feet in size, to defendants and lot 12A to plaintiffs, which was ultimately merged into plaintiffs' original parcel. Plaintiff's law firm represented defendants in the purchase of this property.

A dispute later arose between defendants and plaintiffs regarding an easement over a portion of lot 13 which defendants' predecessor in title previously granted to plaintiffs. This resulted in plaintiffs ultimately commencing an action against defendants for injunctive relief. Defendants, who were then encountering zoning problems upon attempting to renovate the carriage house for use as a single-family dwelling, counterclaimed asserting, *inter alia,* (1) a claim sounding in professional malpractice arising out of plaintiff's representation of them in their purchase of property from the estate alleging

that the breakup of lot 12, done at plaintiff's request, constituted a subdivision thereof which was negligently done since it resulted in lot 12B being substandard in size for a single-family dwelling, and (2) a claim sounding in actual fraud, based on plaintiff's alleged misrepresentation to defendants during the same transaction that the carriage house could be occupied or rented as a separate dwelling when he knew it could not because, as divided, the lot on which it stood was substandard in size. Following Supreme Court's grant of plaintiffs' motion for summary judgment dismissing both these counterclaims and corresponding denial of defendants' cross motion for summary judgment on their counterclaims, defendants appealed.

Addressing first the negligence claim, it seems clear from an examination of the survey map prepared for defendants which shows the property to be conveyed (i.e., lot 13 and 12B) as one continuous parcel, an examination of defendants' deed which actually describes the property conveyed as *one* continuous parcel, not two separate and discrete lots, and from a reading of the definition of a subdivision of land set forth in section 103-1 of the Subdivision Regulations of the City of Middletown, that the merger of one half of lot 12 into plaintiffs' land and one half into lot 13 was not a subdivision. Accordingly, this claim was properly dismissed.

With regard to the fraud claim, it is evident from a reading thereof that actual fraud is alleged. However, as pleaded, defendants assert that the misrepresentation allegedly made by plaintiff regarding renting or occupying the carriage house occurred *after* defendants closed title on the property. Inasmuch as purported representations made after the completion of the transaction cannot be said to have induced defendants to purchase the property, this claim is insufficient and was likewise properly dismissed.

From a reading of defendants' submissions on appeal, the gravamen of their claim against plaintiff appears to be that he failed to advise them of the ramifications of the merger on their ability to renovate and ultimately to use the carriage house as a single-family dwelling. Even construing the pleadings liberally to encompass this claim, it nonetheless lacks merit. While a claim for fraud can be premised upon failure to disclose that which one has a duty to disclose, and this is especially so in the context of a fiduciary relationship such as exists herein *(see, Callahan v Callahan,* 127 AD2d 298), something more than mere silence or a mere failure to disclose facts must be established. In order to trigger the duty to

disclose, the fiduciary must have some reason to believe that the information is material and germane to a contemplated transaction such that the failure to disclose it has the same net effect as an affirmative misrepresentation (60 NY Jur 2d, Fraud and Deceit, §§ 93-96, at 568-577).

Here, there is absolutely no evidence from which we can conclude that plaintiff was aware or should have been aware that defendants wanted to renovate and use the carriage house as a single-family dwelling. The uncontroverted evidence establishes that defendants were seasoned real estate investors who hold numerous investment properties throughout Orange County, that they never expressed an intention to use the carriage house as a single-family dwelling and put no contingencies in the contract of sale regarding the obtaining of building permits or other approvals to assure that such renovation and use could be effected. This, combined with the fact that an examination of the survey and a reading of the deed description make clear that the two parcels were to be merged, a fact which detracts from defendants' contention that they somehow did not know that the property purchased was one lot instead of two, effectively precludes any claim for fraud.*

Mikoll, J. P., Yesawich Jr., Mercure and Crew III, JJ., concur. Ordered that the order is modified, on the facts, with costs to plaintiffs, by adding that the grant of plaintiffs' motion for summary judgment dismissing defendants' first and second counterclaims be without prejudice, and, as so modified, affirmed.

---

* While defendants seek leave to amend their answer, ostensibly to replead this counterclaim, we decline to entertain this request and leave the matter to be determined by Supreme Court upon presentation of the proper motion papers.